Good morning, Your Honors. May it please the Court, my name is Robin Winchester with the law firm of Kessler, Topaz, Meltzer & Cech. I represent the appellant, Ms. Stockman-Sann, and I was counsel of record to Ms. Sann at the district court level. I've asked the panel for 20 minutes, and I would respectfully request reserving 4 minutes for rebuttal. All right. You know, you gave us this complicated case, but what do you want now? It's very hard for me to say you've got anything to gain, except you're wasting our time. So tell me why you have any case. Your Honor, respectfully, defendants cannot moot, and did not moot, their breaches of fiduciary duty that they owed to the company, both in connection with the... What was the harm? The harm to the corporation, Your Honor, was the fact that they breached their duties, and that they did not properly... What was the harm to the corporation? Your Honor, the harm to the corporation was the fact that they... What are the potential damages? What potential damages can we request at the district court level? Granted, that the majority of the damages were mooted in response to our claims that were brought against... What was left? What is left, Your Honor, are the court confession, a number of remedies, both equitable as well as monetary. What are they? They are the court... You mentioned that, I think you say your attorney's fees, but why should you get attorney's fees if you haven't accomplished anything? I'll answer two different questions. First, with respect to the damages that remain, the court confession, a number of remedies... What are the damages? What are the damages? The court could require that the directors and officers who improperly granted the options, who then canceled the options, who then adopted the improper amendment, return a portion of the fees of the $150,000 to $250,000 director fees that were paid to them in connection with those improper acts. The district court... No, what do you mean that they have director's fees as a matter of course, they weren't paid for those particular acts? Your Honor, the damages that remain is that the district court... You mentioned that in your brief, I don't recall anything like that. We did, Your Honor. We said that the court could fashion a number of different remedies. You said that very vaguely and generally, and not very enlighteningly. And now I'm trying to get you to be specific, and you come up with a kind of copy of money. Any idea you divide their director's fees? No, Your Honor. Specifically, the court could require that the directors pay back any amounts that were paying back any consultant fees, any accounting fees that resulted from having to grant and then re-grant the stock options at issue. The court could require that the directors pay back the cost for adopting a new equity plan. The court could also order equitable relief with respect to the improper acts, such as demanding that fees and enjoining these individuals from serving on the board altogether. The court could enjoin these individuals from serving on the compensation committee altogether. Because the majority of the directors who are defendants in our action are still members of the board of directors to this day. So I can contemplate this, will you tell me where in your brief you spell out these remedies? Your Honor, we don't spell out these remedies. The only remedy you ask for in your brief is attorney's fees. So are you just making it up as you come now? No, Your Honor. Why didn't you have it in your briefs? No, Your Honor. I'm explaining to Your Honor what specific damages in our brief, we specifically refer to paragraph A of our request for relief in that in our complaint, we ask for any and all damages in connection with defendant's brief. Any and all. But we, the judges, ask you what are they? And we're puzzled. And Your Honor, I'm answering your question. But why didn't you answer them in your briefs? Your Honor, I believe that we did by saying that there are a number. A number of things, yes. Anything vague. But of all, your attorney's fees. Is that what you're here for? No, Your Honor. Your Honors cannot award attorney's fees. I mean, separate and apart from the fact that the district court erroneously applied Delaware law, it has had other preclusive effects. The reason why there aren't many cases that are on point as to what specifically would happen in this situation is because the district court's erroneous application of Delaware law, as well as federal law with respect to the standard by which it should have judged our complaint, has caused preclusive effects on Ms. Stockman-Sand's litigation strategy. Preclusive effect? Preclusive effect, Your Honor. Because of the fact that the court erroneously applied Delaware law, as a practical matter, what normally would have happened, or what happens a lot in Delaware in such a situation, is that when directors take and a company takes actions that specifically moot a plaintiff's claims in response to their allegations of wrongdoing, one of two things usually happens in Delaware. First of which is either usually the parties resolve the action, or two, under the mootness doctrine in Delaware, a plaintiff and her counsel is entitled to appropriate attorney's fees for the benefit that was conferred. As part of that, as part of the mootness doctrine, it is a presumption that defendants' actions to moot the claims were done directly in response to the lawsuit, the court needs to make a finding of meritorious when filed. Because of the fact that the district court erred in applying Delaware law to the issue of demand utility in the first place, then that has caused a preclusive effect on Ms. Stockman-Sand's ability to decide what to do next. Are you arguing he misapplied Delaware law or he should have applied some different law? No, Your Honor. I'm arguing that the district court misapplied, erroneously applied Delaware law. Delaware law is applicable. Correct, Your Honor. And there is no question between the parties that Delaware law, being that Quicksilver is a Delaware corporation, under Cayman, Delaware substantive law applies to the issues of the case, and the issue of demand utility specifically. And that is really, Your Honor, where the court was erroneous in two different senses. One, with respect to Delaware law, and two, with respect to federal law in the sense that the court took all inferences in favor of defendants rather than plaintiffs, as well as simply ignored certain facts that were pled in the complaint. Isn't it true that the demand was not, it was actually demonstrated, the lack of utility of the case, just by filing the lawsuit? I mean, you could have just as simply demanded that the stocks be returned and the amendment, you know, that they fix the problem. I don't see why, I mean, I don't think the district court was wrong. I think the facts as they evolved in this case prove he was right. Actually, Your Honor, I would say the opposite. I would say that defendants' acts in response to our lawsuit shows that we were right. In the sense that our claim... Well, instead of filing your lawsuit, you had made the demand on the board of directors. You don't think they would have done these same things knowing that a lawsuit could follow? No, Your Honor, because there's different standards with respect to making a demand versus filing a lawsuit. That is why Delaware law allows a plaintiff to make a decision at the get-go. And to decide that demand is futile at the get-go is a strategic and a practical consequence. By conceding, by making a demand on the board, you do not know that any board of directors is going to say, okay, you know what, you got us, we're going to cancel the grants. By doing so, you've conceded that demand was futile, and you have given up a large amount of your correct the problem, because by conceding... I thought that's what you actually want, is the problem to be corrected. That's correct, Your Honor, but there is no guarantee, which is why demand futility is a test, and why demand futility is an option. That what a plaintiff is supposed to do and what we do do is... Whose burden is it to prove futility? It is plaintiff's burden, Your Honor. And defendants' consequential actions after the fact, that is why Delaware law requires that demand be determined at the time the complaint is filed. There are specific cases in Delaware on point that deal with this that say, what the defendants do after the case is filed is of no moment, because what it allows is machinations that happen after the fact. Maybe it's of no moment to whether or not demand was futile, but it's definitely of moment to whether we have jurisdiction over this case. But there are two completely separate issues, Your Honor. The issue of whether or not there is jurisdiction and whether or not there are, which we allege there are still remaining, albeit not as large as damages as were when we first filed our case. You still haven't articulated what damages you think you're entitled to. Your Honor, as I've stated, in part we are not able to specifically quantify. I can only tell you what the categories of damages are, because we have not had the ability to find out how much the company spent in connection and how much the company incurred in connection with the defendants' breaches of fiduciary duty by making the grants in the first place, then rescinding the grants, then making new grants, then adopting an amendment which is improper, then adopting a new plan. I can give you the categories of damages, such as the amounts that were spent by the company in connection with those acts, but I cannot quantify exactly how much the company spent without discovery into those specific amounts. But, again, that is a separate question from demand futility and what the defendants did in response to our lawsuit. And that is where the district court, first of all, should not have and cannot consider the actions that were taken afterwards for purposes of deciding demand futility. Delaware law specifically disallows that, and that is why any changes on the board, for example, if the day after we filed our lawsuit the entire board turned over and said, we're getting rid of all these directors and getting new directors, that would still have no preclusive effect whatsoever on the issue of demand futility because the issue is, at the time we filed our lawsuit, could a majority of the board at that time independently and disinterestedly consider a demand? If that were the case, Your Honor, then, yes, there are many derivative lawsuits where a plaintiff has brought to light wrongdoing where a board of directors could run around after the fact and try to, quote, correct or try to limit what a court may do and what a court may order with respect to damages or remedies with respect to those defendants who breached their fiduciary duties. It's sort of like saying, okay, I robbed a bank, but the next day I went back and I gave the money back, so I didn't really commit a crime. I didn't really do anything because I gave it back. Well, that's not really how it works. You can't get caught with your hand in the cookie jar, give the cookie back, and say, no harm, no foul. That's how Delaware law looks at demand futility and how it looks at the claims that were pled here. Now, the damages may be limited, the fact that I gave the money back, okay, that may be that a large portion of the damages were remedied, but it certainly doesn't preclude all damages and all remedies that a court may order. So you do concede that McKnight did surrender the 400,000 shares of stock? Your Honor, after our complaint was filed, Mr. McKnight filed a Form 4 that said that those shares were rescinded. We have nothing to rebut the Form 4 that Mr. McKnight filed that said that he rescinded the additional 400,000 RSUs that were granted to him. So do you know that it's true as a fact or not? Your Honor, we don't have anything to rebut. I realize what you're saying. How else would you disprove that he had it? Your Honor, if in discovery we found out that that was a false Form 4 that was filed, then that would disprove that that Form 4 was in fact true and filed. But as I'm standing here today, I'm saying no, I have nothing to— That's pretty speculative. I'm not saying that I dispute what he filed.  I get the line you're drawing. Just like with respect to the other grants, the defendants did immediately, although they said that they were proper grants, did immediately give up and rescind in response to our lawsuit the other improper grants. But really, Your Honors, I think that, again, with the issue of demand futility, that the grant to Mr. McKnight, again, the court was not able to and did not or could not consider facts that happened afterwards. What the court was, under Delaware law, was required to determine was at the time that the lawsuit was filed, whether there was a majority of the Board of Directors that could properly consider a demand with respect to Mr. McKnight and the grant that was made to him. At that time, it was a nine-member board. And Delaware law is clear, as well as this circuit court in the Lynch case is clear, that grantors and recipients of improper option awards are incapable of deciding a demand. So that leaves Mr. McKnight and the three compensation committee members. Now, as to Mr. Exxon, that is where the court went terribly awry of Delaware law, because Delaware law recognizes that there are certain relationships  One of which is close family members. Close family members, absent unusual circumstances, are unable to objectively consider a demand against another close family member. The other relationship are close friends. Similar to family members, Delaware law recognizes that it is absent unusual circumstances that when allegations in a complaint raise a reasonable doubt regarding one's close relationship with another, they cannot objectively consider a demand against that individual. The third relationship is a superior, when you have a boss relationship with the individual who you're asking that individual to sue. So in a sense, you're asking a subordinate to consider a demand to sue their boss. And Delaware law, in the Mitchell case, in the student loan case, and now Chief Justice Strine, has made clear that absent some unusual circumstances, such as somebody being independently wealthy, that when that is that individual's principal occupation, and when that relationship with the boss and subordinate is of any normal boss-subordinate relationship, that that individual is incapable, it just makes sense. Did you say you wanted to reserve four minutes? I did, Your Honor. Well, you're well into that. Okay, Your Honor. Well, I will just conclude with respect to Mr. McKnight. The case that the district court relied on, the MGC case, was not anywhere close to the facts of this case. In that case, they were outside directors, non-employee directors of the company, who were being asked to consider a demand. And that is the only case that the district court relied on instead of the six or seven other Delaware cases that were specifically on point that, say, a boss and subordinate relationship necessarily excuses demand with respect to that subordinate. All right. Thank you, counsel. Thank you, Your Honor. May it please the court, Michael Yoder for appellees. Footnote 8 of appellant's reply brief makes clear that we're here litigating over a claim for attorney's fees that could only be made because plaintiff failed to make a pre-suit demand, the Delaware law required, and we are now litigating whether plaintiff's failure was excused to determine if plaintiff can get attorney's fees. I note that in the reply brief there are no other damages described, and I also note that count one of the amended complaint, which addressed the June 2011 grants that not only were to Mr. McKnight but Mr. Stevenson and Mr. Ines, has been dropped. They conceded in the district court it was moot. Yet all these damages that plaintiff's counsel now has raised with the court today would be equally applicable to the June 2011 grants. Indeed, that's where this story started. The only grants that are now at issue are the 400,000 grants that were made to Mr. McKnight beyond the 800,000 in November of 2012. What's the standard? Mr. Gates, form four, the counsel says she has no evidence to rebut it. What's the standard when you file and sign a form four? Is that under a penalty of perjury? What's the standard for that? I don't know specifically, Your Honor, if it's under penalty of perjury, but it's a public filing. It's a public filing, so if it was incorrect there would be all sorts of... There are serious penalties for making a false filing. I also note this, that the same situation presented itself in 2012 when Mr. Stevenson and Mr. Aness surrendered their grants and were reissued grants in a new calendar year, which was absolutely appropriate, and there's no argument being made that the comp committee didn't have the authority and discretion to issue these annual RSUs in later years. There's no argument that that was in any way a violation of the business judgment of the comp committee to incentivize executives so their compensation is aligned with shareholders. Because keep in mind, for these restricted stock units to ever be of any value, the stock essentially had to triple. So we have a situation with these restricted stock units where they never vested, they probably never would have vested, but there's a very good chance they never would have. If they did, it would only be because the stock price had essentially tripled as a result of the management of these executives, but moreover they've been surrendered in any event. And when plaintiffs amended their complaint to drop Mr. Aness and Mr. Stevenson, they did so on the basis of the Form 4s. They had no questions. So the standard, Your Honor, is a SEC filing like the Form 4, certainly the court can judicially notice the filing itself, but the court also may notice the facts in the filing if they're not seriously in dispute. And I submit here they really are not seriously in dispute, just as the election of new directors is no longer in dispute. Indeed, I note that in the reply brief, appellants don't even argue their counts 4 and 6, which deal with the election of the 2013 board because there have now been three subsequent board elections to that. Again, proper for the court, I believe. I'm sorry. I just want to be sure of this. So Mr. McKnight never cashed in or got any monetary value for the 400 RSUs? Correct. And so when they gave them back, they had the same value as at the same time as when they were issued to him? Well, the value would all be based upon the future performance of the stock. Right, but it would have gone up or down. It would have been the same. It's tantamount to him not ever having received them because in terms of whether the company was damaged by him having the shares and giving them back. Correct. Nothing has been paid out, nor would anything be paid out, unless the stock price reached a number in excess of $12. Where is it now? I'm sure you know. I do. It's regrettably under $2. Okay. It's gone down significantly. So this case really is lawyer-driven. It's a fight over fees. There's nothing left at stake. There's no shareholder interest to be protected. There's no damages to be awarded, no injunctions to be entered. Well, should we consider issuing a declaratory judgment that the 2000 plan required shareholder approval of the 2012 amendment? I don't think it serves any purpose because, again, that amendment is now ineffective. No new grants can be made under the 2000 plan as amended because the company and the shareholders adopted a new executive compensation plan that supersedes the old plan for purposes of new grants. So the only grants that had been made under the old plan that had any issue with respect to the $800,000 annual limit have been mooted by what's at issue or what was at issue in this case. So, in other words, no new grants can be made under the 2000 plan that would at all make relevant the validity of that amendment. So it's a non-issue. It would serve no purpose, Your Honor, to have more proceedings in the district court as to whether such a declaration is proper or not, essentially be litigating a non-issue that would be of no concern other than for purposes of whether the plaintiff can recover attorney's fees. But do you agree that it required shareholder approval? No, not at all. And indeed, backing up a little bit, the board actions that are at issue here are sort of at the heart of why we have a business judgment rule in any event. The comp committee decision is the question of executive compensation and how executives should be compensated in order to incentivize them for purposes of benefiting the shareholders of the company. Second decision is interpreting a plan document because the real issue, as I think is pretty apparent from appellant's reply brief when we're talking about the 2012 amendment, is whether the board had authority to make that amendment without a shareholder vote. And that puts into question section 6.3 of the plan and the language of that provision that talks about when a shareholder vote is required. And there's language at the end that makes clear, we believe, that the shareholder vote is only required to the extent required by law or at the determination of the board. Judge Guilford concluded that that provision was ambiguous at best and that it was really sort of central to a board's exercise of business judgment to interpret potentially ambiguous plan or corporate documents, which is what they did here. The appellants were arguing, as we sort of move over to the merits of the futility argument, that if they had a plausible interpretation of an ambiguous provision, then that would be enough to get them past the heavy burden they face. And it is their burden, and it is a heavy burden, to show demand futility. And I guess just as a sidelight, I'll note that counsel suggested there were strategic reasons for not making a pre-suit demand. Well, be clear, if they had made a pre-suit demand and no action had been taken, they are still permitted to file suit because they've satisfied that requirement by making it. The strategic reason is if they make it and corrective action is taken, there's no lawsuit in which they can claim attorney's fees for that lawsuit. But here they didn't make the demand. And the argument is with respect to the amendment, although the amendment is a moot issue at this point, but if we get to the merits, what Judge Guilford found is, lookit, the board was faced with a question of whether this amendment requires shareholder approval or not. The board determined it did not. And Judge Guilford concluded, we submit rightfully so, that that's exactly the type of action that a board should take within the exercise of its business judgment. And you need to allege more to be able to establish demand futility than a board's interpretation of an ambiguous plan provision. Now they cite some cases on this issue that I think really bring home the point. The Pfeiffer v. Leto case, which I think is an important case in this area. And what Pfeiffer makes clear is that in order to establish the second prong of Aronson, which is what we're talking about, that there's particularized facts to show reasonable doubt that the board exercised its business judgment. In Pfeiffer, and this is at page 6, and it's citing the Friedman v. Redstone case, the challenged transaction was such a clear and undisputed violation, that violation alone created a reasonable doubt the board acted without knowledge. Or put another way, the violation was so clear that the board could not contend good faith or honest belief within the meaning of the business judgment rule. And indeed, in the Pfeiffer case, the court there found that the interpretation that was claimed by the board was unreasonable on its face. And in the Sanders v. Wang case, which is the case that really sort of started the Delaware courts down this path, the interpretation of the board was so unreasonable that the court granted a motion for judgment on the pleadings. So that's the kind of situation where that prong is available in order to excuse demand futility. And do we have to decide whether Stockman's case resulted in substantial benefit to the corporation? If the stock did? No, I don't believe so. Again, I think that goes to the heart of the business judgment rule. That is for the comp committee to decide how they should be compensating their executives with performance-based stock or restricted stock units, which is what was done here. In terms of the November 2012 grants to Mr. McKnight, which are the only grants that are at issue at this point in time based upon the corrected and amended complaint, as counsel noted, it is undisputed that for the nine board directors, Langman, Sweet, Speaker, and Ellis were independent. So there's no question. That means only one other needs to meet that test in order for the rails prong to fail here for the plaintiffs. And under rails, that's where you have something less than a full board action that's being challenged. And because here it's the action of the compensation committee, it's a different test than Aronson. And the only question is whether the plaintiff has met their heavy burden in alleging particularized facts that create reasonable doubt that a majority of the board are conflicted here. And they argue that Mr. Exon was, and they argue that the three members of the comp committee were. And Judge Guilford, we submit, got it right as to Mr. Exon. And had he reached the three members of the comp committee, which he wasn't required to do, but which this court may do in reviewing his dismissal, you would get to the same determination. As to Mr. Exon, the point I would make is that the cases that have been cited, to your honors, in the briefs by the parties, make clear that it's not enough that a director is an employee of the company, even if it may be an officer of the company, even the CEO of the company. What the cases show is that the particularized facts have to really go beyond that. It's not this presumption that there's a conflict in that situation, although they would suggest that that's the case. But the In Re Sagent case makes clear that demand futility can't be pled merely on basis of allegations that directors acted or would act to preserve their positions. If that were the case, every inside director would be disabled. So something more needs to be alleged, particularized facts. And if you look closely at the cases that have been cited here, they deal with situations where the beneficiary of the corporate action controlled and dominated the corporation. 80% shareholder, largest shareholder, someone who really does clearly have the power to influence and control, to dominate, the director whose independence is being questioned. Second, though, if you look closely at those cases, most of them include allegations of particularized facts that indeed the beneficiary had exerted control and domination over the purported conflicted director. So if you look at, for example, the Meisel case, there were allegations where there had been prior and multiple transactions involved. The CalPERS v. Coulter case, which is really the main case I think that appellants rely upon here, involve a situation where the beneficiary was the largest single shareholder. There was a history of the corporation dealing with the CEO's other businesses. The inside director, who was being challenged as not being independent, had previously worked for this CEO. The CEO had given gifts of another company to this director, and there were allegations that the director himself had provided false information to the corporation in connection with one of the challenged transactions. So there is more than simply this transaction involves somebody who's your boss. Here, what's significant is McKnight is not a controlling shareholder. His shareholdings were just slightly over 2%. Moreover, there's no allegation of any prior instances where McKnight exerted any control over Exxon. There was no allegation of any prior transactions where there was any suggestion that Exxon had somehow not been independent in evaluating issues involving Mr. McKnight. There's no allegation that Mr. McKnight controls Mr. Exxon's employment or his salary. In fact, the record makes clear that it is the comp committee, not Mr. McKnight, that sets Mr. Exxon's salary, and indeed appellants conceded that. Their only argument is, well, Mr. McKnight can influence by making recommendations to the comp committee. But again, the business judgment presumes that the people will do their jobs, and it's plaintiff's burden to show particularized facts otherwise. As to the comp committee, the argument that appellants make there is that because they were the ones that made the decision to give the RSU grants to Mr. McKnight, that they face liability, and therefore they can't be independent or they can't be trusted to independently evaluate the issue. That's not the law. The law in Delaware is that they have to plead particularized facts that a director's actions were so egregious that a substantial likelihood of director liability exists. And I could spend time talking about these grants. These aren't backdated stock options. These are incentivized RSUs. The limit that we're talking about is an annual limit, not an aggregate limit. There's no issue of improper or unauthorized dilution of shareholder value. In fact, the NYSC and NASDAQ both recognize the significant difference. The annual limits aren't material. The aggregate limits are. In addition, as the record shows, the annual grants are all premised on issues under Section 162 of the Internal Revenue Code and the deductibility of those amounts. And Quicksilver and the Board have been very clear in their public filings in 2011, 2012, that there are circumstances where they make grants that are not deductible under Section 162M. Why would that be? Because of net operating losses, you don't need the deduction. But they're very clear, and that's what happened here. So just on the merits of it, entirely different. But if you look again at their cases, which I think is maybe the best way to look at this, if you look at Ryan v. Gifford, Delaware Court of Chancery case, where you have backdated options, you have the company lying... You're about to run out of time. Do you want to sum up? Just in sum, thank you, Your Honor, is that the decisions here are at the heart of the business judgment. They clearly are decisions that should be within the business judgment of the committees and the Board. Here, they weren't given an opportunity to correct this. The proof is in the pudding. I know that goes more to mootness than to futility. But steps were taken so that there were no violations of this alleged 800,000 share limit, and we're still in litigation. And we're still in litigation because we're litigating over attorneys' fees. So this case should be brought to a conclusion by this court either by dismissing as moot or affirming what we submit as a very well-reasoned decision by Judge Guilford. Thank you. Thank you, counsel. We have some time remaining. Thank you. Number one, there is no law that says just because a plaintiff has smaller damages than they initially began with that this court does not have jurisdiction to decide and to correct a clear error of law of the district court. Secondly, counsel misspoke and said in response to your Honor's question, why didn't we just make a demand? Why didn't we concede that directors, a majority of which we concluded are conflicted under Delaware law, why didn't we just make a demand? If we had made a demand and defendants had corrected the action, yes, we could have filed a lawsuit at that point in quantum merit. Delaware law allows a plaintiff who confers a benefit to apply for attorney's fees for the benefit that they concurred. So by making a demand, we did not somehow give up our ability or by not making a demand to seek compensation for a benefit that was conferred. But by doing so, you've given up an extreme amount of litigation and the ability of the court to determine that this board is conflicted and impairs a plaintiff's ability to move forward and prosecute an individual for breaches of fiduciary duty. That is why Delaware law allows a plaintiff to make the decision to file a case based upon demand futility. That is why demand futility exists because a board, a majority of which is conflicted, is incapable of making that decision. Separately, with respect to this board again, the question is, is there a reasonable doubt? Is there a reasonable doubt that a majority of the board could objectively consider a demand? It is not beyond a reasonable doubt. It is not legally incapable ever, ever. It is, is there a reason to doubt? The board's response and what they did here was a cover-up. And it is shown just by the facts of this case and what the company and the board has admitted that it did. Seven months after it made the improper grants, their story is that in February of 2012, they all of a sudden... Well, you're out of time, so rather than introducing a new line of argument... Your Honor, I would respectfully submit that the facts here and what the board did with respect to adopting the secret amendment in the first place shows that they have lacked good faith and that they are individuals who are capable of independently and disinterestedly considering a demand with respect to the amendments that they made. All right. Thank you, counsel. Thank you.
judges: Noonan, Wardlaw, Murguia